IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHAD K. CALVERT,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>SMITH'S FOOD & DRUG CENTERS, INC.,<br>Defendant. | MEMORANDUM DECISION AND<br>ORDER ON PENDING MOTIONS<br><br><br><br><br>Case No. 2:06-CV-299 TS |

This matter is before the Court on cross motions for summary judgment, Plaintiff's

Motion to Extend Discovery and Dispositive Motion Deadlines, Plaintiff's Rule 56(f) Motion,

and various motions to strike.  The Court will rule as follows.

## I.  UNDISPUTED FACTS

Plaintiff began working for Smith's in either October or November 2003.  At the time he

was hired, Plaintiff was given a copy of Smith's Employee Handbook.  The Employee Handbook

described various policies and procedures, including Smith's attendance policy.  The attendance

policy states: "If you are absent for two consecutive days without notifying your department

manager or supervisor, the absence will be interpreted as voluntary resignation from the

company.["1]  Plaintiff acknowledged receiving, reading, and understanding the policies and provisions contained in the Employee Handbook.[2]

In February 2005, Plaintiff was suspended for five days for missing two consecutive shifts.[3]

On June 1, 2005, Plaintiff was scheduled to work a shift starting at 11:00 p.m. and ending at 7:30 a.m. the following morning.  Plaintiff did not show up for his scheduled shift and did not call to have his absence excused prior to the beginning of the shift.  At approximately 3:30 a.m. on June 2, 2005, Plaintiff called his shift supervisor to explain that he had missed his shift due to medication he was taking for kidney stones and that he would not be coming in to complete the remainder of his shift.  Plaintiff then returned to bed.

Later on June 2, 2005, Plaintiff called Jared Rowley, the Grocery Manager, and Emily Arveseth, the Human Resource Manager.  Mr. Rowley indicated that Plaintiff would need to get a doctor's note excusing his absence from the previous night.  Ms. Arveseth told Plaintiff that, in addition to the doctor's note excusing his absence, he would also need to get a note certifying that he was physically capable of coming back to work.  Ms. Arveseth informed Plaintiff that if he needed to take FMLA leave, he could pick up the paperwork from any store.  Plaintiff did not obtain the notes until June 6, 2005.

Plaintiff was scheduled to work on either June 2, 2005, or June 3, 2005.  Plaintiff was also scheduled to work on June 5, 2005.  Plaintiff did not appear for either of these shifts.

---

[1]Docket No. 41, Exhibit D.

[2]*Id.*, Exhibit E.

[3]Docket No. 54-3.

Smith's began processing Plaintiff's termination on June 6, 2005.  Plaintiff's termination was finalized on June 8, 2005.

## II.  MOTIONS TO STRIKE

Plaintiff seeks to strike the inclusion of the Standard Operating Guidelines which is attached to Smith's Motion for Summary Judgment.  Plaintiff also seeks to strike the Affidavits of Natalie Redd and Cheryl Hedquist.  Plaintiff seeks sanctions associated with these motions to strike.  Defendant seeks to strike portions of Plaintiff's Affidavit, which was filed with Plaintiff's Motion for Partial Summary Judgment.

A.    STANDARD OPERATING GUIDELINES

Plaintiff moves to strike the Standard Operating Guidelines attached as Exhibit F to Smith's Memorandum in Support of Summary Judgment based on lack of foundation and Smith's failure to disclose the Standard Operating Guidelines.  The Standard Operating Guidelines, provides the following guidance with respect to Smith's "no call, no show" policy: the first violation will result in a five-day suspension and warning notice and the second violation within two years will result in termination.

It is undisputed that Defendant failed to provide Plaintiff with a copy of the Standard Operating Guidelines as part of its Rule 26(a) initial disclosures.  Although Defendant asserts that Plaintiff was aware of the Standard Operating Guidelines, Defendant admits that the Standard Operating Guideline was not provided until it filed its Motion for Summary Judgment.

As Plaintiff correctly points out, Defendant has provided no foundation for the Standard Operating Guidelines.  Defendant has produced no information as to when the Guidelines were created and when they were in use.  More importantly, however, Defendant has produced no evidence that Plaintiff ever received a copy of the Standard Operating Guidelines.  For these

reasons, the Standard Operating Guideline will be stricken.  However, Plaintiff's Motion for

Sanctions associated with this Motion to Strike will be denied.

B.      THE AFFIDAVIT OF CHAD CALVERT

On August 1, 2007, Plaintiff filed a Motion for Partial Summary Judgment.  In support of

that Motion, Plaintiff attached the Affidavit of Chad Calvert.  Defendant now seeks to strike

paragraphs 8-10 of the Affidavit, arguing that these paragraphs are inconsistent with Plaintiff's

deposition testimony and are only meant to create a sham issue of fact.

Paragraphs 8-10 are as follows:

8.      After experiencing unbearable pain during my work shift from May 30,
2005 - June 1, 2005, I went to the hospital immediately following my work shift
and saw a urologist Dr. Andrew Southwick regarding the pain I had experienced
and told that I needed to have the large kidney stone removed as soon as possible.
9.      On June 1, 2005, I contacted Smith's to inform them about my need for
surgery and to attempt to schedule the necessary time off.
10.     As a result of side effects from the medicine prescribed by Dr. Southwick
and/or from other complications from my kidney stone, I was unable to make it
into work from the start of my June 1, 2005 - June 2, 2005 shift.  However, as
soon as I was able, I contacted my supervisor at Smith's during the early morning
of June 2, 2005, to inform Smith's of my condition.[4]

The Court will disregard a contrary affidavit "when it 'constitutes an attempt to create a

sham fact issue.'"[5]  Courts consider the following factors "in determining whether an affidavit

presents a sham issue . . . 'whether the affiant was cross-examined during his earlier testimony,

whether the affiant had access to the pertinent evidence at the time of his earlier testimony or

_____

[4]Docket No. 46, Exhibit A.

[5]*Burns v. Bd. of County Comm'rs of Jackson County*, 330 F.3d 1275, 1282 (10th Cir.
2003) (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)).

whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.'"[6]

Defendant argues that Paragraph 8 should be stricken because Plaintiff testified that he did not want surgery and that his doctor agreed to treat the kidney stone with medication. There is nothing in Paragraph 8 to the contrary. Therefore, it will not be stricken.

Defendant argues that Paragraph 9 should be stricken because Defendant testified that after his doctor's appointment on June 1, 2005, he took his medication and went to bed. Defendant argues that Paragraph 9 in inconsistent with Plaintiff's earlier testimony concerning his activities on June 1, 2005, and his testimony concerning surgery. The statements in Paragraph 9 contradict Plaintiff's deposition testimony and create a sham issue of fact. Therefore, the Court will strike this Paragraph.

Defendant argues that Paragraph 10 should be stricken because of the differing reasons that Plaintiff missed his June 1, 2005 - June 2, 2005 shift. Further, Defendant argues that Plaintiff did not inform Defendant of his condition. Here, the different reasons that Plaintiff missed his shift are irrelevant. Further, it is undisputed that Plaintiff contacted his supervisor on June 2, 2005, and informed him why he missed his shift. For these reasons, this paragraph will not be stricken.

C.     THE AFFIDAVITS OF NATALIE REDD AND CHERYL HEDQUIST

Defendant has submitted the Affidavits of Natalie Redd and Cheryl Hedquist as part of their summary judgment motions. Plaintiff moves to strike these Affidavits because Defendant failed to disclose the identity of these individuals under Rule 26. Plaintiff also seeks sanctions.

---

[6]*Id*. (quoting *Franks*, 796 F.2d at 1237).

Defendant attached the Affidavit of Natalie Redd to its Motion for Partial Summary Judgment on the Issue of After Acquired Evidence. Ms. Redd is a paralegal for Smith's outside counsel. Her Affidavit details searches conducted regarding Plaintiff's criminal history and the results of those searches. Plaintiff has admitted his criminal history and that he incorrectly answered a question concerning his criminal history on his employment application form. The Affidavit of Natalie Redd adds nothing. Therefore, Plaintiff's Motion to Strike will be denied.

Plaintiff also challenges that Affidavit of Cheryl Hedquist. However, Plaintiff identified Ms. Hedquist as one of his potential witnesses in his pretrial disclosures. Therefore, Plaintiff cannot claim surprise or prejudice. Therefore, Plaintiff's Motion to Strike will be denied. Further, Plaintiff's Motion for Sanctions will be denied.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[7] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[8] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[9]

---

[7] Fed. R. Civ. P. 56(c).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

IV.  MOTIONS FOR SUMMARY JUDGMENT

Plaintiff's Second Amended Complaint contained four causes of action: (1) violation of the Family Medical Leave Act ("FMLA"); (2) violation of the covenant of good faith and fair dealing; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.  Plaintiff has since abandoned his third and fourth causes of action.  Defendant Smith's moves for summary judgment on Plaintiff's two remaining claims.  In response, Plaintiff has filed his own Motion for Partial Summary Judgment on his FMLA claim.  Plaintiff opposes summary judgment on his second cause of action.  Additionally, Defendant has filed a motion for partial summary judgment concerning damages as they relate to Plaintiff's FMLA claim.

A.      FMLA

Plaintiff brings two claims under FMLA: (1) an interference claim pursuant to 29 U.S.C. § 2614(a)(1); and (2) a retaliation claim under 29 U.S.C. § 2614(a)(2).

*1.      Notice*

As a preliminary matter, Defendant argues that Plaintiff failed to give Smith's the proper notice required to invoke FMLA.

"The analysis of improper notice under the FMLA is separate from the analysis of the *substantive* claim that an employer interfered with the exercise of an employee's FMLA rights."[10]  29 C.F.R. § 825.303(a) states that "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.  It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary

_____

[10]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004).

circumstances where such notice is not feasible."  However, "[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA . . . ."[11]

Plaintiff has presented sufficient facts to overcome Defendant's Motion for Summary Judgment on this issue of whether he had given proper notice to Smith's.

### 2.   Interference

"To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights."[12]

### a.   Whether Plaintiff was Entitled to FMLA Leave

"The FMLA entitles a qualified employee to up to twelve weeks of leave during any twelve month period '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'"[13]  Serious health condition means "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."[14]

---

[11]29 C.F.R. § 825.303(b).

[12]*Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005).

[13]*Id.* (quoting 29 U.S.C. § 2612(a)(1)(D)).

[14]29 U.S.C. § 2611(11).

Continuing treatment by a health care provider includes:

(I) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities, due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
(A) Treatment two or more times by a health care provider . . . ; or
(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
[or]
. . .
(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).[15]

Here, Plaintiff cannot show the "period of incapacity" necessary under 29 C.F.R. § 825.114(a)(2)(I) because he cannot show a period of incapacity of more than three consecutive calendar days during the time he was employed by Smith's. The only days which Plaintiff points to occurred after he had been terminated. Additionally, the "treatment two or more times" pointed to by Plaintiff occurred prior to his alleged "period of incapacity," not subsequently, as required. However, Plaintiff has presented an issue of material fact as to whether his kidney stones constituted a chronic serious health condition.

---

[15]29 C.F.R. § 825.114(a)(2).

9

> b.    *Whether Smith's Action was Related to the Exercise or Attempted Exercise*
> *of Plaintiff's FMLA Rights*

If an employee's termination would have occurred regardless of the request for FMLA leave, the employee may be terminated even if such termination prevents the employee from exercising his right to leave under FMLA.[16]

Smith's alleges that Plaintiff violated its "no call, no show" policy by accruing a second violation within two years as set out in the Standard Operating Guideline. As discussed above, however, the Standard Operating Guideline has been stricken for lack of foundation and will not be considered by the Court. Thus, Smith's is left to rely on the attendance policy set out in the Employee Handbook, which provides: "If you are absent for two consecutive days without notifying your department manager or supervisor, the absence will be interpreted as voluntary resignation from the company."[17]

Smith's argues that Plaintiff would have been terminated under this policy because he missed his shifts of June 1, June 2 or 3, and June 5, without notifying Smith's. Plaintiff argues that he did not miss two consecutive shifts. Rather, he argues, that on June 2, 2005, when he notified Smith's of the situation he was placed on involuntary leave. Plaintiff argues that Smith's effectively placed him on leave by requiring that he provide a doctor's note stating that he was fit to return to work. As a result, he could not have worked the June 2 or 3, or June 5, shifts.

Genuine issues of material fact preclude summary judgment to either party on Plaintiff's interference claim. In particular, issues of fact remain as to whether Plaintiff was entitled to

---

[16]*Bones*, 366 F.3d at 877.

[17]Docket No. 41, Exhibit D.

10

FMLA leave and whether Plaintiff's termination was related to his attempt to exercise his FMLA rights. Thus, summary judgment will be denied as to Plaintiff's FMLA interference claim.

 *3. Retaliation*

 Retaliation claims are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[18] "Under this analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation. If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action. The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."[19]

 "To state a prima facie case of retaliation, [Plaintiff] must show that: (1) [he] engaged in protected activity; (2) [Smith's] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[20] The Tenth Circuit has "characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer."[21]

 For the same reasons stated above in relation to Plaintiff's interference claim, summary judgment is likewise inappropriate on Plaintiff's retaliation claim.

---

 [18]*Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

 [19]*Id*. (internal citations omitted).

 [20]*Id*. at 1171.

 [21]*Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) (quoting *Metzler*, 464 F.3d at 1171).

### 4.    *After Acquired Evidence*

Smith's argues that, in the event that Plaintiff is ultimately successful on his FMLA claim, his damages should be limited under the doctrine of after acquired evidence.  Defendant states that on October 2, 2006, it discovered that Plaintiff had a criminal history which he failed to disclose on his employment application.  Had Defendant been aware of this, it states that Plaintiff would have been terminated.  Thus, Defendant requests that any damages be limited to those before October 2, 2006.  Plaintiff does not dispute his criminal history or that he failed to disclose it on his employment application.  Rather, Plaintiff argues that Defendant's motion is untimely and is based on inadmissible evidence.  Neither reason prevents the Court from granting partial summary judgment based on after acquired evidence.  The Court agrees that the after acquired evidence doctrine precludes an award of damages to Plaintiff after October 2, 2006.

Plaintiff first argues that Defendant's Motion is untimely, and should be denied as such.  Under the scheduling order,[22] all dispositive motions were due by August 1, 2007.  This Motion was not filed until September 4, 2007.

The Motion is clearly untimely, despite Defendant's claim that it is not a dispositive motion.  Despite this, Plaintiff has responded to the Motion and it is now fully briefed and ready for decision by the Court.  Further, deciding the Motion will narrow the issues for trial.  Therefore, the Court will consider the motion, despite its untimeliness.

Plaintiff also argues that the Motion is based on inadmissible evidence.  In particular, Plaintiff takes issue with the Affidavits of Natalie Redd and Alan Brown.  Plaintiff's complaints

---

[22]Docket No. 11.

regarding the Affidavit of Natalie Redd have been discussed above.  Plaintiff has not moved to strike the Affidavit of Alan Brown and has provided no evidence to contradict it.

Plaintiff does not contest his criminal history.  In fact, Plaintiff testified about his criminal history during his deposition.  Further, Plaintiff admitted that he answered his employment application incorrectly with regard to that criminal history.  Finally, Plaintiff has come forward with no evidence to dispute the Affidavit of Alan Brown which states that "[h]ad Smith's known of Plaintiff's extensive criminal history and his dishonesty, as exhibited in his employment application, Smith's would have immediately terminated Plaintiff's employment on October 2, 2006."[23]

The doctrine of after acquired evidence operates to limit a party's damages when the employer, during the course of discovery, discovers information which would have resulted in the employee's termination.[24]  "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[25]  This doctrine has subsequently been applied to FMLA cases.[26]

---

[23]Docket No. 61, Exhibit D.

[24]*McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360–63 (1995).

[25]*Id*. at 362–63.

[26]*See, e.g., Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 976–80 (8th Cir. 2005) (affirming use of after acquired evidence instruction in relation to FMLA claim); *Miller v. AT&T Corp.*, 250 F.3d 820, 837 (4th Cir. 2001) (applying after acquired evidence doctrine to FMLA claims); *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997) (same).

Here, Defendant has presented information that Plaintiff had a criminal history, that he did not disclose that criminal history on his employment application, and that Plaintiff would have been terminated as a result of those actions. Plaintiff has provided no evidence to rebut these claims and, in fact, admits his criminal history and his failure to disclose his criminal history. As a result, the Court will grant Defendant's Motion for Partial Summary Judgment on the Issue of After Acquired Evidence and will limit Plaintiff's recovery of damages, if any, to the period between his termination and October 2, 2006.

B.     THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff's second cause of action alleges a breach of the implied covenant of good faith and fair dealing. Defendant argues that Plaintiff's second cause of action fails as a matter of law. Defendant argues that Plaintiff was an at-will employee and that the implied covenant of good faith and fair dealing is inapplicable. Plaintiff responds that there are questions of fact which preclude summary judgment on the issue of whether an implied-in-fact contract existed between himself and Smith's.

"Where an employment agreement mentions no period of duration, employment is presumed to be at will."[27] "A plaintiff/employee may overcome this presumption by showing that the parties created an implied-in-fact contract, modifying the employee's at-will status."[28] "[A]n employee may use an employer's written policies, bulletins, or handbooks as evidence of an implied-in-fact contract."[29] Further, "evidence of conduct and oral statements may establish

---

[27]*Hodgson v. Bunzl Utah, Inc.*, 844 P.2d 331, 333 (Utah 1992).

[28]*Id.*

[29]*Id.*

an implied-in-fact contract even without the support of written policies, bulletins, or handbooks."[30]  "[F]or an implied-in-fact contract term to exist, it must meet the requirements for an offer of a unilateral contract."[31]

Here, there is no evidence of an implied-in-fact contract between Plaintiff and Smith's. In fact, all evidence points to the contrary.  The Employee Handbook is quite clear in that "it does not create a contract of employment nor is it a guarantee of employment for any specific period of time."[32]  Plaintiff has not alleged any other facts which would point to an implied-in-fact contract.  The Court finds Plaintiff has failed to come forward with evidence of facts from which a jury could find that an implied-in-fact contract existed.  Therefore, summary judgment on this issue is appropriate here.

## V.  MOTIONS TO CONTINUE/EXTEND TIME

Plaintiff has filed two related Motions: a Motion to Extend Certain Scheduling Deadlines; and a Motion for Continuance Under Rule 56(f).  Because of the rulings discussed above, it is unnecessary to extend the discovery and dispositive motion deadlines.

## VI.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Strike Standard Operating Guidelines (Docket No. 53) is GRANTED, but Plaintiff's Motion for Sanctions (Docket No. 59) related to that Motion is DENIED.  It is further

---

[30]*Id*. at 334.

[31]*Johnson v. Morton Thiokol*, 818 P.2d 997, 1002 (Utah 1991).

[32]Docket No. 67, Exhibit C.

ORDERED that Defendant's Motion to Strike Portions of the Affidavit of Chad Calvert (Docket No. 65) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiff's Motion to Strike Affidavits of Natalie Redd and Cheryl Hedquist (Docket No. 74) and Plaintiff's Motion for Rule 37(c) Sanctions (Docket No. 78) are DENIED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 40) is GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 45) is DENIED.  It is further

ORDERED that Defendant's Cross Motion for Partial Summary Judgment on the Issue of After Acquired Evidence (Docket No. 62) is GRANTED.  It is further

ORDERED that Plaintiff's Motion to Extend Certain Deadlines (Docket No. 42) and Plaintiff's Motion for Continuance Under Rule 56(f) (Docket No. 56) are DENIED.

DATED   November 26, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge